IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| DOLORES HOLLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00005 |
| | ) | Judge Richardson / Frensley |
| LIBERTY LIFE ASSURANCE CO. OF | ) | |
| BOSTON and SEDGWICK CLAIMS | ) | |
| MANAGEMENT SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

This matter is before the Court upon a Motion for Summary Judgment filed by Defendant Liberty Life Assurance Company of Boston, the only remaining Defendant in this action ("Defendant" or "Liberty").[1] Docket No. 26. Along with it's Motion, Defendant has filed a supporting Memorandum of Law. Docket No. 27. Defendant has not, however, filed a Statement of Undisputed Facts as required by Local Rule 56.01(b), nor has Defendant filed any other submissions that are in a form required by Fed. R. Civ. P. 56.

Plaintiff has filed a Response in opposition to Defendant's Motion. Docket No. 30. Plaintiff has additionally filed her Declaration with Exhibits. Docket Nos. 33-1 - 33-4.[2]

---

[1] Plaintiff settled with Sedgwick Claims Management Services and the parties filed a Joint Motion to Dismiss Sedgwick from this action. Docket No. 24. On June 25, 2018, Judge Crenshaw granted that Joint Motion; Plaintiff's claims against Sedgwick were dismissed and Sedgwick was terminated as a party in this matter. Docket No. 25.

[2] Because Defendant did not file a Statement of Undisputed Facts, there was no such Statement to which Plaintiff was required to respond. *See* Local Rules 56.01(b) and (c).

Plaintiff filed this action alleging violations of the Employment and Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, *et seq*. ("ERISA"). Docket No. 1. Plaintiff alleges unlawful denial of her disability benefit claims, despite medical and other supporting evidence demonstrating that she qualified for those benefits under the terms of her employee benefit plans. *Id.* Specifically, Plaintiff alleges that when evaluating and denying her long-term disability claim, Defendant did not consult with her physicians or exercise its right to examine her, but instead relied on Sedgwick's review of Plaintiff's short-term disability claim and the information provided therein. *Id.* Plaintiff argues that she was not diagnosed with fibromyalgia until May 2016, after Sedgwick had denied her claim and therefore that Defendant did not consider her fibromyalgia when denying her claim. *Id*.

Plaintiff additionally argues that in denying her claim, Defendant relied on the opinion of Dr. Bullard, a physician advisor Defendant paid to review Plaintiff's file, but Dr. Bullard's report failed to address the following: (1) the fact that Plaintiff's lung capacity was diminished to 27 percent; (2) how Plaintiff's diminished lung capacity affects her ability to perform the material and substantial duties of her occupation; (3) Dr. Carpenter's findings regarding the severity of Plaintiff's condition; (4) an analysis of how Plaintiff's COPD and other conditions affect her ability to perform the material and substantial duties of her occupation; (5) consideration of the unique cognitive and physical demands of Plaintiff's job and whether Plaintiff's conditions affected her ability to meet those demands; (6) citations supporting his assertion that Plaintiff's medications do not result in any side effects; and (7) the complete omission of mention of Plaintiff's Questionnaire submitted to Defendant and the limitations set forth therein. *Id.*

Plaintiff further argues that in denying her claim, Defendant relied on the opinion of Dr.

Kathy Yawingu, another physician advisor Defendant paid to review Plaintiff's file, but Dr. Yawingu's report failed to address Plaintiff's severe COPD or how Plaintiff's COPD combined with her other conditions would affect her ability to perform the material and substantial duties of her job, and also failed to provide citations supporting her assertion that Plaintiff's medications do not result in any side effects. *Id.*

Plaintiff argues that although Defendant denied her claim on the basis she did not meet the Plan's definition of disability, the denial letter referred to file reviews conducted by Drs. Bullard and Yawingu but did not cite opinions or findings from any physician outside of Defendant's hired file review physicians. *Id.* Plaintiff maintains that her claim file contains no findings or observations from Drs. Bullard and Yawingu that refute or attempt to refute the opinions of Dr. Carpenter, Plaintiff's physician. *Id.* Plaintiff additionally notes that the denial letter did not address whether her diminished lung capacity of 27 percent enabled her to meet the demands of a full-time occupation and to perform the material and substantial duties of her job, and further notes that the denial letter did not address whether Plaintiff's condition allowed her to meet the cognitive demands of her occupation and lacked any analysis as to whether the cumulative effects of Plaintiff's conditions cumulatively create a disability that renders Plaintiff unable to perform the material and substantial duties of her occupation. *Id.*

Plaintiff contends that in wrongly determining that Plaintiff could perform the material and substantial duties of her occupation, Defendant ignored critical facts in the record illustrating the severity of her COPD and failed to evaluate the cumulative effect of Plaintiff's conditions such that Defendant's flawed denial was incorrect, arbitrary, and capricious. *Id.* Plaintiff additionally contends that, in not appealing Defendant's denial of her claim, she reasonably relied

upon the opinion of the case manager assigned to her claim, Ms. Casey Miranda, that since Plaintiff had not been awarded short-term disability benefits, it would be pointless for her to appeal the denial of her long-term disability benefits. *Id.* Plaintiff seeks "to recover past and future benefits under her employee benefit plans, to enforce the present rights existing therein, to declare her rights under the terms of both plans, and to recover costs and attorney's fees as provided by ERISA." *Id.*

Defendant filed the instant Motion and supporting Memorandum on July 31, 2018, arguing that it is entitled to a judgment as a matter of law because Plaintiff failed to exhaust her administrative remedies prior to filing the instant action, as she did not timely appeal Defendant's denial of her long-term disability benefit claim. Docket Nos. 26, 27. Defendant additionally argues that Plaintiff's failure to appeal cannot be excused by futility because Plaintiff "can offer no evidence showing that her failure to appeal the benefit denial would have been futile." *Id.*

Plaintiff, in her Response and supporting materials, argues that she had no obligation under the terms of Defendant's own disability policy to file an administrative appeal prior to filing suit. Docket Nos. 30, 33-1 - 33-4. Specifically, Plaintiff argues that the terms of Defendant's own policy explicitly provide simply that a claimant cannot start any legal action: (1) until sixty days after proof of claim has been given; or (2) more than three years after the time proof of claim is required. *Id.* Plaintiff notes that Defendant's policy further expressly states that it "is the entire contract." *Id.* Plaintiff additionally notes that the letter denying her long-term disability benefits claim that Defendant sent to Plaintiff used permissive, not mandatory, appeal language, stating only that Plaintiff "*may* request review of this denial." *Id.* Plaintiff contends that because there is no provision in Defendant's policy requiring claimants to appeal a denial of

4

long-term disability benefits before filing a legal action, because Defendant's policy constitutes "the entire contract," and because Defendant's denial letter used only permissive language, her action in this Court is proper such that Defendant is not entitled to summary judgment on failure to exhaust grounds.  *Id.*

With regard to Defendant's futility argument, Plaintiff responds that even if exhaustion had been mandatory, she reasonably relied upon the statement from Ms. Casey Miranda, the case manager Defendant assigned to handle every step of Plaintiff's case, that appealing the denial would be a "waste of time" because Plaintiff had already been turned down for short-term disability benefits with Sedgwick and "if you're denied your short-term, you're going to be denied your long-term."  *Id.*  Plaintiff argues that since she had been denied her short-term disability benefits three times by Sedgwick and since Ms. Miranda was the case manager who had administered her long-term "disability claim from start to finish, wrote the denial letter, and was the point person on a haphazard, outcome-oriented review that did not fully examine the severity of [Plaintiff's] medical condition," Plaintiff "had every reason to believe her case manager was telling the truth" that appealing her claim denial would be a futile "waste of time." *Id.*

For the reasons discussed below, the undersigned finds that genuine issues of material fact exist such that summary judgment is neither appropriate nor warranted.  Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 26) should be DENIED.

5

Case 1:18-cv-00005    Document 37    Filed 02/05/19    Page 5 of 13 PageID #: 606

## II. Undisputed Facts[3]

### A. Declaration of Dolores Hollister with Exhibits

Plaintiff Dolores Hollister was a participant in an ERISA Employee Welfare Benefit Plan offered through her employer, Corporate Risk Holdings, LLC ("Corporate Risk"). Docket No. 33-1 ("Plaintiff's Dec."), ¶ 2. From Plaintiff's hiring in 2008 until her medical retirement in 2016, Plaintiff earned various promotions working her way up from the role of Verifications Specialist to the supervisory roles of Senior System Analyst and Helpdesk Coordinator. *Id.*, ¶ 3. In her dual roles of Senior System Analyst and Helpdesk Coordinator, Plaintiff had to perform a range of duties, including walking throughout the company's office to perform hands-on trouble shooting of equipment. *Id.* On a regular basis, Plaintiff also needed to solve complex problems, communicate with in-house engineering staff, and train analysts and subordinates. *Id.*

In 2006, Plaintiff was diagnosed with Chronic Obstructive Pulmonary Disease ("COPD"). *Id.*, ¶ 4. During the last four years of Plaintiff's employment, her COPD progressed to the point where her pulmonologist told her that a lung transplant may be an option for her in the future. *Id.* The symptoms of Plaintiff's COPD were disabling and included shortness of breath, overwhelming fatigue, wheezing, and cognitive difficulties. *Id.*

In 2016, Plaintiff was diagnosed with fibromyalgia after experiencing symptoms of chronic pain throughout her body. *Id.*, ¶ 5. Plaintiff has also been diagnosed with sleep apnea, which compounds the fatigue she experiences as a result of her COPD and fibromyalgia. *Id.* Plaintiff also suffers from psoriatic arthritis, a condition that results in pain, stiffness, and

---

[3] Unless otherwise noted, these facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

swelling. *Id.*

For most of Plaintiff's employment with Corporate Risk, Plaintiff dealt with the severe symptoms of COPD. *Id.*, ¶ 6. As Plaintiff's overall medical condition deteriorated, Plaintiff found it increasingly difficult to perform her job duties. *Id.* Plaintiff's fatigue, lack of endurance, inability to concentrate, overall body pain, among other medical problems, prevented her from meeting the physical and cognitive demands of her supervisory position. *Id.*

In January 2016, Plaintiff's COPD had become so severe that a test of her lungs showed that they were functioning only at a 27 percent capacity. *Id.*, ¶ 7. On February 12, 2016, Plaintiff had to end her employment at Corporate Risk due to her declining health. *Id.*

On February 15, 2016, Plaintiff filed a claim for short-term disability benefits with Sedgwick Claims Management Services ("Sedgwick"). *Id.*, ¶ 8. Although Plaintiff submitted detailed medical records illustrating the severity of her condition, Sedgwick denied Plaintiff's claim for short-term disability benefits on February 25, 2016. *Id.* Plaintiff promptly filed an appeal of the denial of short-term disability benefits and Sedgwick upheld their decision and denied Plaintiff's appeal in April 2016. *Id.*

After Sedgwick denied Plaintiff's claim and appeal for short-term disability benefits, Plaintiff briefly returned to her previous position on April 26, 2016. *Id.*, ¶ 9. During Plaintiff's brief return, she was permitted to work from home, although she had to take frequent work breaks to deal with the overwhelming pain and dizziness that Plaintiff was experiencing throughout her body. *Id.* Plaintiff would also forget the simplest job-related tasks. *Id.* In addition, Plaintiff was taking a lot of pain medication, including opioids, to control the pain from her psoriatic arthritis and fibromyalgia. *Id.* The medication affected Plaintiff's ability to think

7

clearly and made her constantly drowsy, and Plaintiff was regularly making job-related mistakes. *Id.* After working for three hours on April 29, 2016, Plaintiff took permanent leave. *Id.*

On July 25, 2016, Sedgwick sent Plaintiff a letter stating that it had undertaken another review of Plaintiff's claim and appeal, and upheld its prior decisions. *Id.*, ¶ 10. Altogether, Sedgwick reviewed and denied Plaintiff's claim for short-term disability benefits three separate times. *Id.*[4]

On or around July 11, 2016, Plaintiff filed a claim for long-term disability benefits with Liberty Life Assurance Company of Boston ("Liberty"). *Id.*, ¶ 11. While Plaintiff was applying for long-term disability benefits, she worked with Liberty employee, Casey Miranda. *Id.*, ¶ 12. Ms. Miranda worked as Plaintiff's disability case manager. *Id.* As Plaintiff's disability case manager, Ms. Miranda provided Plaintiff with advice and information on all parts of the claims process, including the relevant deadlines and documentation that Plaintiff needed to submit to Liberty in order for her claim to be properly reviewed. *Id.* During the claims process, Plaintiff worked almost exclusively with Ms. Miranda. *Id.*

In May of 2016, Plaintiff was diagnosed with fibromyalgia by Dr. Susan Harwell, Plaintiff's rheumatologist. *Id.*, ¶ 13. Plaintiff received this diagnosis after Sedgwick had turned down Plaintiff's claim and appeal for short-term disability benefits. *Id.* In Plaintiff's claim for long-term disability benefits, Dr. Harwell submitted information about Plaintiff's fibromyalgia to Liberty. *Id.*, ¶ 14.

Nearly all, if not all, of the important medical information that was submitted to

---

[4] Plaintiff has attached to her Declaration true and accurate copies of the three letters Sedgwick sent to her denying her claim and appeal for short-term disability benefits. Docket Nos. 33-2, 33-3, 33-4.

Sedgwick as part of Plaintiff's claim for short-term disability benefits was also submitted to Liberty for consideration in Plaintiff's long-term disability claim. *Id.*, ¶ 15

As part of Plaintiff's claim for long-term disability benefits, Plaintiff completed and submitted a form prepared by Liberty called an Activities Questionnaire. *Id.*, ¶ 16. In the form, Plaintiff detailed how she rarely leaves the house, that she needs help getting dressed, and that she experiences chronic pain throughout her body. *Id.* Plaintiff also detailed how she experiences "brain fog" which affects her ability to think clearly and that she has difficulty communicating due to her poorly functioning lungs. *Id.* Although Liberty received Plaintiff's Activities Questionnaire, Liberty never discussed Plaintiff's answers with her, nor did Liberty request that Plaintiff take an Independent Medical Exam. *Id.,* ¶ 17.

On or around September 22, 2016, Plaintiff received a telephone call from Ms. Miranda, during which Ms. Miranda informed Plaintiff that Liberty had decided to deny her claim for long-term disability benefits. *Id.*, ¶ 18. During the call, Plaintiff discussed with Ms. Miranda whether Plaintiff should appeal the denial of her benefits. *Id.* Ms. Miranda informed Plaintiff that it would be a "waste of time" for Plaintiff to appeal because she had already been turned down for short-term disability benefits by Sedgwick. *Id.* Ms. Miranda explained that "if you're denied your short-term; you're going to be denied your long-term." *Id.* Ms. Miranda further explained to Plaintiff that her claim for long-term disability benefits did not include any new information from Plaintiff's claim for short-term disability benefits. *Id.*, ¶ 19. Plaintiff told Ms. Miranda that her statement was untrue because Plaintiff had also included information about her diagnosis of fibromyalgia. *Id.* Ms. Miranda told Plaintiff that this new medical information was not enough for Plaintiff to qualify for long-term disability benefits. *Id.* Plaintiff had no reason to

9

Case 1:18-cv-00005   Document 37   Filed 02/05/19   Page 9 of 13 PageID #: 610

doubt Ms. Miranda's comments that it would be a "waste of time" to appeal my denial of long-term disability benefits. *Id.*, ¶ 20.

Before Liberty denied Plaintiff's claim for long-term disability benefits, Sedgwick had rejected Plaintiff's multiple efforts at obtaining short-term disability benefits. *Id.* Shortly after that, Liberty denied Plaintiff's claim for long-term disability benefits, despite receiving additional information that Plaintiff had recently been diagnosed with fibromyalgia. *Id.*

In Plaintiff's claims for disability benefits with Sedgwick and Liberty, Plaintiff and her physicians provided detailed information regarding her medical conditions including the severity of her COPD and how her lungs functioned at a level of only 27 percent. *Id.*, ¶ 21. Plaintiff has been diagnosed by physicians with COPD, sleep apnea, fibromyalgia, and psoriatic arthritis, yet despite these diagnoses, Plaintiff's repeated efforts at obtaining disability benefits were denied. *Id.* Based upon Plaintiff's experience applying for disability benefits with Sedgwick and Liberty and Ms. Miranda's comments, it was clear to Plaintiff that it would be futile to appeal Liberty's denial of long-term disability benefits. *Id.*

At no point did anyone inform Plaintiff, either verbally or in writing, that Plaintiff was required to appeal Liberty's denial of her claim for long-term disability benefits before filing the instant action contesting Liberty's decision. *Id.*, ¶ 22.

In December 2016, Plaintiff was awarded Social Security disability benefits from the Social Security Administration. *Id.*, ¶ 23. The Social Security disability benefits were awarded retroactively to August 2016. *Id.*

### III. Law and Analysis

**A. Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at

322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**B. The Case at Bar**

As discussed, the grounds for Defendant's Motion for Summary Judgment are that Plaintiff failed to exhaust her administrative remedies prior to filing this suit and that Plaintiff's failure to do so cannot be excused due to futility. Docket No. 26. As the moving party, Defendant bears the burden of showing that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Defendant has failed to do so. Defendant has neither submitted its requisite Statement of Undisputed Facts, nor has it submitted any other evidence in a form required by Fed. R. Civ. P. 56 that would establish the lack of genuine issue as to any material fact and its entitlement to a judgment as a matter of law.

As noted, when determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. Taking the evidence in the light most favorable to Plaintiff, as the Court must do at this stage in the proceedings, Defendant's own policy does not require appeal for exhaustion, rather, Defendant's own policy requires only that a claimant cannot start any legal action until sixty days after proof of claim has been given or more than three years after the time proof of claim is required. Docket No. 30, p. 4. Further taking the evidence in the light most favorable to Plaintiff, at no point did anyone inform Plaintiff, either verbally or in writing, that she was required to appeal Defendant's denial of her claim for long-term disability benefits before filing the instant action (Plaintiff's Dec., ¶ 22); in fact, the denial letter sent by Ms. Miranda to Plaintiff stated only that Plaintiff

12

permissibly "*may*" appeal the benefits denial (Docket No. 30, p. 10).

Additionally, the issue of whether Plaintiff reasonably relied upon Ms. Miranda's assertion that appealing her long-term benefits denial would be a "waste of time" is a genuine issue of material fact, the resolution of which is best reserved for the finder of fact.

As has been demonstrated, genuine issues of material fact exist and Defendant is not entitled to judgment as a matter of law.

## IV.  Conclusion

For the reasons set forth above, the undersigned finds that genuine issues of material fact exist such that summary judgment is neither appropriate nor warranted.  Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 26) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge

13